UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TAMERA KEARNS, *et al.*                                                 PLAINTIFFS

v.                                                   Civil No. 3:17-cv-00223-GHD-RP

KEITH KITE, *et al.*                                                DEFENDANTS

## MEMORANDUM OPINION

The Court has before it a motion for partial summary judgment [Doc. 28] filed by Plaintiffs John and Tamera Kearns and a motion for summary judgment [Doc. 30] filed by Defendants Keith Kite, Max Herring, and Desoto County, Mississippi. Having considered the matter the Court finds that the defendants' motion should be granted in part and denied in part, and the plaintiffs' motion should be denied.

### Background

In May 2016, Defendants Keith Kite and Max Herring, deputies with the DeSoto County Sheriff's Department, received an arrest warrant for Justin Kearns for unpaid child support. Warrant, Pls.' Mot. for Partial Summ. J., Ex. A, [Doc. 28-1]. The deputies investigated Justin's address listed on the warrant but found it abandoned. Max Herring Deposition, Pls.' Mot. for Partial Summ. J., Ex. B [Doc. 28-2] at 21. Herring later found the address of Tamera Kearns, Justin's mother, and the deputies went to that address. Herring Dep., Defs.' Mem., Ex. B [Doc. 31-2] at 22.

Upon arriving at the house, the deputies testified that they observed a vehicle in the driveway, a running air conditioning unit, a light on in the house, and oxygen bottles in the carport. Herring Dep. at 27. The deputies stated that they approached the house and knocked on the carport door but received no answer. Statement of Max Herring, Defs.' Mem., Ex. C [Doc. 31-3]. They then moved around to the front of the house. *Id.* The front door contained two doors: a storm door

1

and an inner door. Herring Dep. at 27. The deputies testified that both doors were open. *Id.*; Keith Kite Deposition, Pls.' Mot. for Summ. J., Ex. D [Doc. 28-4] at 6. The officers testified that Herring knocked again on the open inner door and yelled into the house announcing his presence. Herring Dep. at 27–28; Statement of Keith Kite, Defs.' Mem., Ex. D [Doc. 31-4]. Again, they received no answer. The deputies also testified that from outside, they were able to observe another oxygen bottle in the living room. Herring Dep. at 27–28.

Tamera Kearns disputes that the doors were open, and testified that she and John always keep the doors shut to keep their pets in. Tamera Kearns Dep., Pls.' Resp. in Opp., Ex. A [Doc. 34-1] at 47–48. Tamera further testified that a box of groceries was placed against the inner door on the day in question that would have prevented it from being cracked open. *Id.* at 48.

Kite and Herring entered the house and began checking rooms. According to the deputies, this was because the front door was open; oxygen bottles were present both outside and inside the house; and no one responded to Herrings calls. Herring Dep. at 28, 34. Eventually, they located Tamera in a back room. *Id.* at 54. The deputies testified that they told Tamera they were checking on her, and that Tamera asked them to the kitchen and to retrieve her oxygen bottle. *Id.* at 54–55. Tamera informed the officers that Justin no longer lived in Mississippi. *Id.* at 55. The officers testified that Tamera then handed Herring a key and asked him to lock the front door of the house. *Id.* at 56.

Tamera testified that when the deputies arrived, she was sleeping and wearing earplugs. Tamera Kearns Dep. at 42. She could hear the officers yelling, which startled her. *Id.* She testified that when the deputies made it to her room, Herring repeatedly asked her "Where's Mr. Kearns", which she later realized meant her son, Justin. *Id.* at 42–45. John was not present in the home during any of these events.

The Kearns brought this § 1983 action against Kite, Herring, and the DeSoto County Sheriff's Department. The Kearns bring two claims: first, that Kite and Herring violated their Fourth Amendment right to be free from unreasonable seizures by entering their home without a warrant when no warrant exception applied; and second, that DeSoto County's inadequate training of the deputies was a driving force behind the illegal search. After discovery was concluded, the Kearns moved for partial summary judgment on the issue of liability against Kite and Herring. Kite, Herring, and Desoto County moved for complete summary judgment.

## Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action'." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

## Analysis

### I. Defendants' Motion for Summary Judgment.

Defendants assert that Deputies Herring and Kite are entitled to qualified immunity because they were permitted to enter the residence under the exigent circumstances exception to the Fourth Amendment. Defendant's further argue that summary judgment against DeSoto County should be granted because there is no evidence of a policy or practice that caused the alleged constitutional violations here. Finally, Defendants' argue that John Kearns claims should be dismissed because he was not present when the deputies entered the home and because there is no evidence that he suffered any damages.

#### a. *Qualified Immunity as to Deputies Herring and Kite*

"Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.' " *Lane v. Franks*, 573 U.S. 228, 134 S. Ct. 2369, 2381, 189 L. Ed. 2d 312 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). "The doctrine of qualified immunity protects government officials

4

from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

Qualified immunity is an affirmative defense. However, the "plaintiff has the burden to negate the assertion of . . . immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir.2009). "'When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.'" *Beaulieu v. Lavigne*, 539 F. App'x 421, 424 (5th Cir. 2013) (per curiam) (quoting *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia, Miss.*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc))).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" *Tolan*, 134 S. Ct. at 1865 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Courts have discretion to decide which prong to consider first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.*

1. Violation of a Constitutional Right

The Court first considers whether the deputies' actions violated Kearns' Fourth Amendment rights.

"Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). "It is a 'basic principle of Fourth Amendment law that searches and seizures

5

inside a home without a warrant are presumptively unreasonable'". *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S. Ct. 1284, 157 L.Ed.2d 1068 (2004)).

That principal is not without exceptions. *Id.* One is the "emergency aid" exception. Under this exception, "law enforcement may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* (citing *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 57 L.Ed.2d 290 (1978)). The exception applies when the officer has "an objectively reasonable basis that a person within the house is in need of immediate aid." *Michigan v. Fisher*, 558 U.S. 45, 47, 130 S. Ct. 546, 175 L.Ed.2d 410 (2009) (internal quotations and marks omitted); *see also Linicomn v. Hill*, 902 F.3d 529, 536 (5th Cir. 2018) ("Exigent circumstances exist where, inter alia, officers must enter a home to provide emergency assistance to preserve life or prevent serious injury."). The exception "does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises." *Fisher*, 558 U.S. at 47, 130 S. Ct. 546 (citing *Brigham City*, 457 U.S. at 404-405, 126 S. Ct. 1943).

The emergency aid exception requires "strong evidence of an emergency at the scene or an immediate need for medical attention." *Linicomn*, 902 F.3d at 536. So, for example, the exception did not apply when a social worker entered a home to investigate child abuse when the children were not in immediate danger. *Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 422 (5th Cir. 2008).

Most instructive is *United States v. Troop*, 514 F.3d 405. In *Troop*, border patrol agents tracked a number of undocumented aliens for several miles in the summer heat of Texas. *Id.* at 406. While tracking the aliens, the agents found evidence that the aliens were becoming fatigued.

6

*Id.* Seven illegal aliens had already died from exhaustion and heat exposure that summer, and the temperature that night was in the nineties. *Id.* The agents eventually tracked the aliens to the house of the defendant, Troop. At the house, agents knocked on the closed front and back doors, announcing their presence, but received no answer. *Id.* One agent even yelled through a window into a room where she observed individuals sleeping with no response. *Id.* The agents then entered the home where they found a number of illegal aliens and Troop. Troop was convicted of transporting illegal aliens. *Id.*

Troop appealed, arguing that no exigency existed permitting the agents to enter his home without a warrant. The government contended that evidence that the aliens were fatigued and a lack of response from anyone in the house to their knocking justified the agents' entry. *Id.* at 409.

The Fifth Circuit reversed the conviction, holding the emergency aid exception did not apply. The court noted that evidence that the aliens were fatigued did not demonstrate an exigent circumstance because there was no evidence that the aliens were in need of *"immediate aid"*. *Id.* at 410 (emphasis in original). The court noted a lack of "evidence of medical distress requiring immediate aid, such as loss of blood" or "signs of physical illness." *Id.* The court further said that, without evidence of physical distress, the failure of anyone to respond to the agents' knocking did not create an exigent circumstance, though the court noted that had there been evidence of physical distress, the analysis may have gone differently. *Id.*

On the defendant's motion for summary judgment the Court must resolve all factual inferences in favor of the plaintiff. It is not disputed that when Herring and Kite arrived at the Kearns' residence there was a car present and that there were oxygen bottles in the carport. It is disputed whether the doors to the house was open or closed; the Court resolves that dispute in favor of the

plaintiffs for purposes of this motion in assessing whether plaintiff can prove a constitutional violation occurred.

The Court finds that that the deputies have not established that no constitutional violation occurred. They had no warrant to enter Kearns' residence. The undisputed facts do not create a reasonable belief that someone within was in need of immediate medical attention. In *Troop*, the combination of evidence of fatigue and a failure to respond to the agents' knock was insufficient to support an exigent circumstance. So too here, the mere presence of oxygen bottles outside and the failure to respond to the officers knocking and yelling did not create a reasonable basis for the deputies to believe that someone inside was hurt. The Court therefore concludes that the deputes fail to establish there is no genuine issue of material fact as to whether it was objectively reasonable for them to enter the home.

2. Was the Right Clearly Established?

The Court turns to the second qualified immunity inquiry: at the time this search occurred, was it clearly established that the deputies could not enter the Kearn home under these circumstances.

"The law is clearly established when there is 'controlling authority—or a robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity.'" *Linicomn*, 902 F.3d at 538 (citing *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013)). It is not necessary that there be a "case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (internal quotations omitted).

The Fifth Circuit's opinion in *Troop* establishes that an officer may not enter a house absent a warrant, even under the emergency aid exception, when the entry to the house is closed, there is

no evidence of physical distress, and when occupants fail to respond to the calls of officers. A reasonable officer, seeing only the oxygen tanks in the carport, would know that, armed with only that information, he could not enter a closed door into the home.[1] Accordingly, the Court finds that the deputes fail to show no genuine issue of material fact that the right in question was not clearly established at the time of the incident. Their motion for qualified immunity is denied.

### b. *Municipal Liability against DeSoto County*

DeSoto County argues that the Kearns cannot establish municipal liability against it, because they cannot establish an official policy that was the moving force behind the search of their home. The Kearns argue that the County's inadequate training Kite and Herring on when they could and could not perform a search amounts to deliberate indifference by the County.

A municipality "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978); *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003). To establish liability for the County under an inadequate training theory, the Kearns must show (1) that the County used inadequate training procedures; (2) that the inadequate training caused an illegal search of their home; and (3) the County acted with deliberate indifference in using the inadequate training procedures. *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002).

As discussed above, there is a genuine issue of material fact as to whether a constitutional violation occurred at all. The Court must assume for purposes of this analyses that such a violation did occur; the Court may grant summary judgment only if there is no material factual dispute that the County is not liable for the deputies' actions.

---

[1] Kite even admitted in his deposition that he was aware it would be constitutionally impermissible for him to enter if the door was closed. Kite Dep. at 6.

Here, the Kearns fail to establish the training Kites and Herring received was inadequate. They have presented little evidence as to what training the deputies actually received prior to the incident. Without evidence of what that training was, the Court cannot determine whether the Kearns have shown it was inadequate. The Kearns point to testimony where Herring stated that his supervisors have told him since the incident that his actions were constitutionally permissible. Herring Dep. at 75. But statements made after the incident do not provide evidence what training the deputies received before the incident, and thus do not establish what training existed, or provide a causal link between that training and the constitutional violation.

Further, the Kearns have presented no evidence that the County acted with deliberate indifference. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997) "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Smith v. Brenoettsy*, 148 F.3d 908, 912 (5th Cir. 1998) (internal quotations omitted).

"To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (internal quotations omitted.) The Kearns have not presented any evidence of other illegal searches that arose from the County's training procedures.

Under the single incident exception "a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by 'showing a single incident with proof of the

possibility of recurring situations that present an obvious potential for violation of constitutional rights.'" *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003) (quoting *McClendon v. City of Columbia*, 58 F.3d 432, 442 (5th Cir. 2001)). But that exception "is a narrow one." *Id.* Thus, it applies only "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or [inadequate training]. *Id.* (citing *Brown v. Bryan Ct.*, 219 F.3d at 461 (5th Cir. 2000)). Again, because the Kearns have not presented evidence of what the County's training procedures with respect to searches here, it is impossible to say that any violation was "highly predictable consequence" of that training. Accordingly, the Kearns cannot establish the County acted with deliberate indifference, and their claims against the County must fail.

c. *John Kearns claim*

Finally, Defendants argue that John Kearns' claims should be dismissed because he was not home during the search and he admitted that he suffered no injury from the violation.

In his deposition, John stated that he did not seek any treatment for medical or emotional issues as a result of the search. Deposition of John Kearns, Def.'s Mem., Ex. F. [Doc. 31-6] at 7–8, 12. While such statements may ultimately prove fatal to any claim he has for compensatory damages, "[t]he law is well-established in this Circuit that plaintiffs may recover nominal damages when their constitutional rights have been violated but they are unable to prove actual injury." *Williams v. Kaufman Cty*, 352 F.3d 994, 1014 (5th Cir. 2003) (citing *Louisiana ACORN Fair Housing v. LeBlanc*, 211 F.3d 298, 302 (5th Cir. 2000)). It is irrelevant that John was not home at the time the search occurred. A person's right to be free from unreasonable searches of his home does not vanish just because he isn't there. This was John's home, too, and he may recover, at the least, nominal damages if the deputies illegally searched it. His claims against the defendants will not be dismissed.

## II. Plaintiffs' Motion for Partial Summary Judgment

The Kearns, in turn, also move for summary judgment, asserting that this Court should render judgment on liability as to Herring and Kite. On the plaintiffs' motions, the tables have turned, so to speak, with regard to factual inferences. The Kearns assert that, even assuming both the inner and outer front door were open, there is no genuine issue of material fact that the deputies violated their constitutional rights. The deputies again argue that they are entitled to qualified immunity because exigent circumstances existed to permit them to enter, and because it was not clearly established under the law that existed at that time that they could not enter the residence under those circumstances.

For much of the same reasons that summary judgment is improper for the defendants, so too is it improper for the Plaintiffs. As discussed above, whether exigent circumstances existed, and therefore whether a Fourth Amendment violation occurs, hinges on the objective reasonableness of the deputies' actions. The Fifth Circuit has instructed that "[r]easonableness under the Fourth Amendment should frequently remain a question for the jury." *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (internal quotations omitted). "[I]n those cases where the officer's conduct is less clear and an assessment of reasonableness mandates a number of factual inferences, the case falls within the province of a jury." *Id.*

Here a reasonable jury could believe the deputies assertion that both front doors to the Kearns' residence were open. A jury could further find that with the doors open, the deputies were able to observe into the home and see Tamera's oxygen tank. Such a jury could then find that, considering those facts, along with other undisputed facts—such as the lack of response to their calls or other evidence indicating someone was inside—that it was reasonable for the deputies to enter the home to ensure that no one inside was injured. Because a jury could find that the officers did not commit an illegal search of the Kearns' home, summary judgment must be denied.

12

Further, in assessing qualified immunity, the Court must examine whether the deputies' actions were objectively reasonable in light of clearly established law at the time. Objective reasonableness in the qualified immunity analysis (not to be confused with objective reasonableness in the Fourth Amendment violation analysis) is generally an issue of law, not of fact. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994). But "in those circumstances when there are 'underlying historical facts' in dispute that are 'material to the resolution of the questions whether the defendants acted in an objectively reasonable manner,' the court cannot make a determination on the objective reasonableness and by extension, the applicability of qualified immunity." *Fatan v. Tillman*, No. 4:11-CV-812, 2013 WL 789236, at *6 (E.D. Tex. Jan. 31, 2013), *report and recommendation adopted*, No. 4:11CV812, 2013 WL 789121 (E.D. Tex. Mar. 1, 2013) (quoting *id.*) And in those circumstances, "where there remain disputed issues of material fact relative to immunity, a properly instructed jury may decide the question." *Reese v. Gray*, No. 1:06 CV 126-SA-JAD, 2011 WL 302873, at *3 (N.D. Miss. Jan. 27, 2011) (citing *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir. 1993)); *White v. Walker*, 950 F.2d 972, 976 (5th Cir.1991) ("The entitlement to qualified immunity may be established as a matter of law by the district court. But if there are triable issues of fact about whether an officer could reasonably believe his conduct legal, then a jury should evaluate the question."). The factual dispute about whether the door into the Kearns' home was open thus bears not only on whether the deputies actually committed an illegal search, but whether the deputies could have reasonably believed their actions were permitted. As such, the Court cannot enter summary judgment for the Kearns. Their motion is denied.

## Conclusion

The Court finds that there are genuine issues of material fact as to whether deputies Kite and Herring illegally searched the Kearns' home. The Court further finds that there are genuine issues of material fact as to whether the deputies are entitled to qualified immunity. The Court

finds that there is no evidence establishing that inadequate training by the County caused the potentially illegal search here, or that the County acted with deliberate indifference in training the deputies. Finally, the Court finds that plaintiff John Kearns claims against defendants should not be dismissed.

For these reasons, DeSoto County and Deputies Kites and Herring's motion for summary judgment is granted in part and denied in part, and the Kearns' motion for partial summary judgment against the deputies is denied.

An order in accordance with this opinion shall issue.

This the 17th day of December, 2018.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE